| | |
|---|---|
| ANTHONY DENNIS<br><br>               Plaintiff,<br><br>V.<br><br>THE BRIDGETON POLICE DEPARTMENT, CITY OF BRIDGETON, OFFICER FOX, OFFICER LOPEZ, JOSHUA THOMPSON | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br>CASE NO. 05-CV-4733 (RBK)<br><br><br>        Civil Action |

---

## DEFENDANT'S BRIEF IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

---

**METHFESSEL & WERBEL, ESQS.**
3 Ethel Road, Suite 300
PO Box 3012
Edison, New Jersey 08818
(732) 248-4200
+1(732) 248-2355
mailbox@methwerb.com
Attorneys for City of Bridgeton, Officer
Fox, Officer Lopez & Detective Joshua
Thompson
Our File No.  63806 ELH

Eric L. Harrison

     Of Counsel

Leslie A. Koch

     On the Brief

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

**POINT I** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFFS'
CONSTITUTIONAL CLAIMS AGAINST THE INDIVIDUAL OFFICER
AS THE OFFICER HAVE QUALIFIED IMMUNITY UNDER 42 U.S.C. 1983

**POINT II** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

PROBABLE CAUSE EXISTED AT THE TIME OF THE ARREST AND
THEREFORE THE INDIVIDUAL OFFICERS ARE ENTITLED TO
SUMMARY JUDGMENT TO DISMISS ALL OF PLAINTIFF'S CLAIMS

**POINT III** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

PLAINTIFF HAS FAILED TO ESTABLISH A PRIMA FACIE CASE OF
LIABILITY ON THEPARTY OF THE CITY OF BRIGETON AND
PLAINTIFF'S CLAIMS MUST BE DISMISSED AS A MATTER OF LAW

**POINT IV** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

PLAINTIFF'S CONTINUED INCARCERATION, FOLLOWING A
JUDICIAL FINDING OF PROBABLE CAUSE, WHICH HE DID NOT
CHALLENGE CANNOT AS A MATTER OF LAW BE INPUTED TO ANY
OF THE DEFENDANTS

**POINT V** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

NO CLAIMS CAN BE BROUGHT AGAINST THE  CITY OF BRIDGETON
POLICE DEPARTMENT AS THE CITY OF BRIDGETON IS A DEFENDANT,
THEREFORE PLAINTIFF'S CLAIMS AGAINST THE POLICE DEPARTMENT
MUST BE DISMISSED AS A MATTER OF LAW

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

## <u>TABLE OF AUTHORITIES</u>

<u>Adickles v. S.H. Kress & Co.</u>, 398 <u>U.S.</u> 144, 167-168 (1970) . . . . . . . . . . . . . . . . . . . 12

<u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1480 (3rd Cir. 1990) . . . . . . . . . . . . .11

<u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Baker v. McCollan</u>, 443 <u>U.S.</u> 137, 144 n. 3 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Brodnicki v. City of Omaha</u>, 75 F.3d 1261 (8th Cir.1996)
cert. denied, 519 U.S. 867 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

<u>Carroll v. United States</u>, 267 U.S. 132, 156 (1925) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Carswell v. Borough of Homestead</u>, 381 F.3d 235 (3rd Cir. 2004) . . . . . . . . . . . . . . . . . 6

<u>City of Canton v. Harris</u>, 489 U.S. 378, 385-88 (1989) . . . . . . . . . . . . . . . . . . . . . . 11, 12

<u>Colburn v. Upper Darby Twp.</u>, 838 F.2d 663, 671 n.7 (3rd Cir. 1988) . . . . . . . . . . . . . 16

<u>Daniels v. United States</u>, 393 F.2d 359, 361 (D.C.Cir.1968) . . . . . . . . . . . . . . . . . . . . . .9

<u>Dowling v. City of Philadelphia</u>, 855 F.2d 136, 141 (3d Cir.1988) . . . . . . . . . . . . . . . . .8

<u>Gomez v. Toledo</u>, 446 U.S. 635, 640 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Gramenos v. Jewel Cos., Inc.</u>, 797 F.2d 432, 439 (7th Cir.1986),
cert. denied, 481 U.S. 1028 (1987); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 634 (3d Cir.1995) . . . . . . . . . . . . . . 8

<u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Henry v. United States</u>, 361 U.S. 98, 102 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . .9, 14

<u>Hernandez v. Borough of Palisades Park Police Dept.</u>,
58 Fed.Appx. 909, 912 (3rd Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Hilliard v. N.J. Army Nat'l. Guard</u>, 527 F. Supp. 405 (D.N.J. 1981) . . . . . . . . . . . . . . .5

<u>Hunter v. Bryant</u>, 502 U.S. 224, 228 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

<u>Illinois v. Gates</u>, 462 U.S.213, 244 n. 13 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . .9, 14

<u>Lake v. Arnold</u>, 112 F.3d 682, 689 (3rd Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Merkle v. Upper Dublin School Dist</u>., 211 F.3d 782, 789 (3d Cir.2000) . . . . . . . . . . . . .8

<u>Monell v. Department of Social Services of City of New York</u>,
436 U.S. 658, 690 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

<u>Morrison v. United States</u>, 491 F.2d 344, 346 (8th Cir.1974)) . . . . . . . . . . . . . . . . . .  8, 9

<u>New York v. P.J. Video, Inc</u>., 475 U.S. 868  (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Pembaur v. Cincinnati</u>, 475 U.S. 469, (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

<u>Pierson v. Ray</u>, 386 U.S. 547, 555, (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

<u>Potts v. City of Philadelphia</u>, 224 F.Supp.2d 919, 934 (E.D.Pa. 2002) . . . . . . . . . . . . . . 9

<u>Rodriguez v. City of Patterson</u>, 1995 WL 363710 (D.N.J. 1995) . . . . . . . . . . . . . . . . . .11

<u>Rucciti v. N.Y.C. Transit Auth</u>., 124 F.3d 123, 128 (2$^{nd}$Cir.1997) . . . . . . . . . . . . . . . . . .9

<u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

<u>Schneider v. Simonini</u>, 163 N.J. 336, 354 (2000)
cert. denied, 531 U.S. 1146 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

<u>Sherwood v. Mulvihill et al</u>., 113 F.3d 396, 399 (3rd Cir. 1997) . . . . . . . . . . . . . . . . . . . 6

<u>Shoemaker v. Shoemaker</u>, 11 N.J.Super. 471, 478, (App.Div.1951) . . . . . . . . . . . . . . .15

<u>Simmons v. City of Philadelphia</u>, 947 <u>F</u>. 2d 1042, 1059-1060,
1062-1063 (3d Cir. 1991), <u>cert</u>. <u>den</u>. 503 <u>U.S</u>. 985 (1992) . . . . . . . . . . . . . . . . . . . .  11, 12

<u>Terry v. Ohio</u>, 392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## **<u>RULES</u>**

28 U.S.C. §1915(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

42 U.S.C. §1983  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 2, 5, 8, 10, 11, 12, 16

## **PRELIMINARY STATEMENT**

This matter was brought pursuant to 42 U.S.C. §1983 for an arrest under false pretenses arising out of the arrest of Plaintiff, Anthony Dennis on June 24, 2004.  Based on the statement of victim, police observations at the scene and later investigations, the Bridgeton Municipal Judge found probable cause and issued an arrest warrant.  When the prosecutor's office presented to the Grand Jury, the complaining witness could not be located and determined a "no bill" on the charges.  Dennis filed the instant complaint pursuant to 42 U.S.C. §1983 alleging that the defendants violated the Plaintiff's Fifth Amendment rights of due process of law by falsely arresting the plaintiff and wrongfully depriving the Plaintiff of his liberty.  The individual officers are entitled to qualified immunity for their actions in connection with this arrest.  Additionally, the officers made the arrest based on probable cause which provides for immunity for §1983 actions.  The Plaintiff has provided no evidence that the City of Bridgeton was deliberately indifferent through their policies, procedures or customs to his constitutional rights.  Accordingly, defendants hereby move for summary judgment.

## **PROCEDURAL HISTORY**

On February 1, 2006 the plaintiff filed a one-count Complaint alleging that the defendants violated the Plaintiff's Fifth Amendment rights of due process of law by falsely arresting the plaintiff and wrongfully depriving the Plaintiff of his liberty.  This complaint was made pursuant to 42 U.S.C. §1983, as plaintiff is a state prisoner.  The Complaint named as defendants the Bridgeton Police Department, City of Bridgeton, Officer Fox; Officer Lopez and Detective Joshua Thompson.

Plaintiff sought appointment of counsel pursuant to 28 U.S.C. §1915(e). Honorable Joel B. Rosen, U.S.M.J. denied Plaintiff's request on August 10, 2006. Discovery is now complete.  Pursuant to the Final Pre-Trial Order of the Honorable Joel B. Rose, U.S.M.J. (Dkt 23) defendants hereby move for summary judgment with a requested motion return date of November 3, 2006

## **STATEMENT OF FACTS**

On June 24, 2004 at approximately 2:00 a.m., Patrolman Fox, at approximately 2:00 a.m. near the intersection of Bank and Marion Streets in downtown Bridgeton, was advised by Roberto Hernandez-Agular that plaintiff Anthony Dennis committed a robbery.  Specifically, Patrolman Fox observed Dennis and Agular standing just west of Walnut Street on Marion at the opening of an alley when Agular attempted to get the officer's attention.  Patrolman Fox approached on foot and radioed Patrolman Evans in car 733 to turn around and respond to the location.  It appeared that Dennis saw the patrol car returning to the area and fled on foot into the alley.  Agular ran after him.  Patrolman Fox pursued the subjects on foot.

Once in the alley Patrolman Fox spotted Agular standing near a telephone pole and pointing to an area next to a privacy fence, yelling something about his money. Patrolman Fox then moved to a point at which he could see around the fence and was able to identify  Dennis hiding behind it.

Patrolman Fox ordered  Dennis to come out.  As Dennis exited he stated that he "had nothing to do with the Mexican guy."  Dennis further stated that Agular was in the area to buy drugs and became angry because "he was beat for his money and drugs and that they were on the ground in the grass at the end of the alley."

 Agular, through a translator, advised that he was walking down Bank Street towards Marion Street when he was approached by Dennis from behind.  Dennis asked Agular if he had a cigarette and Agular said no, at which time Dennis raised a bottle he was holding as if he was going to strike Agular.  Dennis then said "give me your money."

3

Agular gave Dennis a ten dollar bill.  Upon approach of the police car Dennis began to run away, at which time Agular chased him on foot.  Dennis threw the money to the ground and stated "there is your money, leave me alone."

At that time Agular, with the police, returned to the area where he claimed to have seen Dennis throw the money to the ground and retrieved the money.  Patrolman Fox signed warrant number 04-1505/06 against Dennis for robbery, theft and possession of a weapon for an unlawful purpose.

After Dennis was Mirandized and complaints were signed against him – and prior to learning of what Agular had said – Dennis volunteered "what did I do, raise a bottle to hit him and demand money?"

Bridgeton Municipal Judge Scruggs found probable cause and an arrest warrant issued.  The municipal court set $5,000 bail, which Dennis did not post, resulting in his confinement.  From June 24, 2004 through November 26, 2004 Dennis was held on these charges, pending Grand Jury action.  On November 26, 2004 numerous additional unrelated charges were lodged against him, preventing his release.

 Agular, the complaining witness, could not be located and therefore did not testify before the Grand Jury.  Without Agular's testimony the Grand Jury "no billed" the case and the charges were dismissed on January 19, 2005.   Dennis was released.

Pursuant to an Internal Affairs investigation conducted promptly upon receipt of Dennis's suit papers, Lieutenant Cuff spoke with Cumberland County Assistant Prosecutor Tina Kell to confirm her determination that the officers had probable cause and her decision to present the case to a Grand Jury.

**LEGAL ARGUMENT**

**POINT I**

**SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFFS'
CONSTITUTIONAL CLAIMS AGAINST THE INDIVIDUAL OFFICERS
AS THE OFFICERS HAVE QUALIFIED IMMUNITY UNDER 42 U.S.C. 1983**


The Complaint alleges a violation of the United States Constitution, which is

actionable through 42 U.S.C. §1983.  Section 1983 is not itself a source of substantive

rights, but provides only "a method for vindicating federal rights elsewhere conferred."

Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979).  42 U.S.C. §1983 provides in relevant

part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State…subjects, or
> causes to be subjected, any citizen of the United States…to
> the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the
> party injured in an action at law, suit in equity, or other
> proper proceeding for redress.

To establish a claim under §1983, a plaintiff must allege (1) a deprivation of a

federally protected right, and (2) commission of the deprivation by one acting under the

color of state law.  Lake v. Arnold, 112 F.3d 682, 689 (3rd Cir. 1997); Gomez v. Toledo,

446 U.S. 635, 640 (1980).  When proceeding under §1983, a plaintiff is required to set

forth specific conduct by the state or its officials that violated the constitutional rights of

the plaintiff.  Hilliard v. N.J. Army Nat'l. Guard, 527 F. Supp. 405 (D.N.J. 1981).

"[G]overnment officials performing discretionary functions generally are shielded

from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have

known." Schneider v. Simonini, 163 N.J. 336, 354 (2000) cert. denied, 531 U.S. 1146 (2001); citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Qualified immunity involves a two-step analysis. First, the court must consider whether, "[t]aken in the light most favorable to the party asserting the injury ... the facts alleged show that the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). It is the plaintiff who bears the burden of showing the defendants actions violated a clearly established right. Sherwood v. Mulvihill et al., 113 F.3d 396, 399 (3rd Cir. 1997). If no constitutional violation is established, then the inquiry ceases. Id.

Where there *may* be a constitutional violation, again in the light most favorable to the plaintiff, a decision must be made as to whether it was clear to a reasonable officer that his conduct was unlawful in the situation. Harlow, 457 U.S. at 818; Carswell v. Borough of Homestead, 381 F.3d 235 (3rd Cir. 2004) ("For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right'." quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Therefore, the plaintiff has the burden to vault the presumption of qualified immunity of the officers.  Plaintiff must show that the officers conduct violated Plaintiff's constitution right and that a reasonable officer knew that his conduct was unlawful in the situation.

Under the seminal case of Terry v. Ohio, 392 U.S. 1 (1968), an officer may conduct a brief investigatory stop when the officer has a "reasonable articulable suspicion" of criminal activity.   In the present case, Patrolman Fox was flagged down at

2 a.m. by Agular, who claimed that he had been robbed by Dennis.  Dennis was found by the police hiding behind a fence in the alley.   Agular showed the police where Dennis had thrown his money when Dennis saw the police.  There is no indication in Patrolman Fox's original arrest report that Dennis told the patrolmen at the scene that Agular had a knife, or that Agular was attacking Dennis.  It wasn't until after Dennis' arrest and interview with Detective Thompson that Dennis made these assertions.

Even viewed in the light most favorable to the plaintiff, Patrolmen Fox and Lopez did not violate Dennis' constitutional rights by investigating what could be described as "reasonable articulable suspicion" of criminal activity.  Based on the information provided at the scene of the incident, the Patrolmen are entitled to qualified immunity for their actions in arresting Dennis.

## POINT II

**PROBABLE CAUSE EXISTED AT THE TIME OF THE ARREST AND THEREFORE THE INDIVIDUAL OFFICERS ARE ENTITLED TO SUMMARY JUDGMENT TO DISMISS ALL OF PLAINTIFF'S CLAIMS**

"The proper inquiry in a 42 U.S.C. § 1983 claim based on false arrest…is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense. " Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir.1995) (quoting Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir.1988)). Probable cause exists when "at the moment the arrest was made…the facts and circumstances within [the defendant's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that the plaintiff had violated the law." Merkle v. Upper Dublin School Dist., 211 F.3d 782, 789 (3d Cir.2000) (citing Hunter v. Bryant, 502 U.S. 224, 228 (1991)).

In Merkle, a teacher sued school district, superintendent, principal, police department and police detective for violations of her rights under the First, Fourth, Sixth, and Fourteenth Amendments, as well as pendent state law claims for defamation, invasion of privacy, false arrest and malicious prosecution of teacher for unlawful removal of school supplies. The Third Circuit held the detective "had every reason to believe a credible report from a school principal who witnessed the alleged crime. This report alone sufficiently established probable cause. [The detective] was not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed." Merkle at 789 (citing Gramenos v. Jewel Cos., Inc., 797 F.2d 432, 439 (7th Cir.1986), cert. denied, 481 U.S. 1028 (1987); Morrison v. United States,

491 F.2d 344, 346 (8th Cir.1974)); see also <u>Potts v. City of Philadelphia</u>, 224 F.Supp.2d

919, 934 (E.D.Pa. 2002) ("A police officer, after all, is not obligated to conduct a mini-

trial before arresting a suspect.") (quoting <u>Brodnicki v. City of Omaha</u>, 75 F.3d 1261 (8th

Cir.1996) cert. denied, 519 U.S. 867 (1996); <u>Rucciti v. N.Y.C. Transit Auth.</u>, 124 F.3d

123, 128 (2[nd]Cir.1997)("Once a police officer has reasonable basis for believing there is

probable cause, he is not required to explore and eliminate every theoretically plausible

claim of innocence before making an arrest.").

     Probable cause has been described by the court as "a probability or substantial

chance of criminal activity, not an actual showing of such activity," <u>Illinois v. Gates</u>, 462

U.S.213, 244 n. 13 (1983) quoted in <u>New York v. P.J. Video, Inc</u>., 475 U.S. 868  (1986),

or "facts and circumstances known to the officer [that] warrant a prudent man in

believing that an offense has been committed", <u>Henry v. United States</u>, 361 U.S. 98, 102

(1959). A prudent officer may balk if the person claiming to be an eyewitness strolls into

the police station and describes a crime from long ago, or if the person making the

accusation is babbling or inconsistent. When an officer has "received his information

from some person - normally the putative victim or an eye witness - who it seems

reasonable to believe is telling the truth", <u>Daniels v. United States</u>, 393 F.2d 359, 361

(D.C.Cir.1968), he has probable cause. Probable cause does not depend on the witness

turning out to have been right; it's what the police knew that matters. <u>Carroll v. United</u>

<u>States</u>, 267 U.S. 132, 156 (1925) ("If the officer acts with probable cause, he is protected

even though it turns out that the citizen is innocent").  "A policeman's lot is not so

unhappy that he must choose between being charged with dereliction of duty if he does

9

not arrest when he has probable cause, and being mulcted in damages if he does." <u>Pierson v. Ray</u>, 386 U.S. 547, 555, (1967).

Even viewed in the light most favorable to the plaintiff, the officers had been flagged down in the middle of the night by Agular claiming to be robbed.  The officers found Dennis hiding behind a fence while Agular identified Dennis as the assailant.  The money was located where Dennis had thrown it.  There is no question that a prudent or reasonable officer would believe that there was criminal activity whether the circumstances where Agular's version that he had be robbed or Dennis' version of a drug buy gone bad.  The fact that Agular later could not be located does not go to the truth of what occurred on that evening, only to the prosecutions ability to prosecute.  These officers were called to the scene by the apparent victim of a crime, they reasonably believed that Agular was truthful in his account of the events.  This establishes probable cause and Dennis was arrested.

Detective Thompson's further investigation through the questioning of Joy Allen and his search for  Agular did not alter the probable cause assessment made by the officers at the scene.  Ms. Allen did not witness the attack and only theorized on what she believed was happening between Agular and Dennis.  Detective Thompson recorded Dennis' version of the events in his supplemental report, however, even with further investigation there was no evidence that supported Dennis' assertions.

As the officers had probable cause to arrest Dennis on June 24, 2004, Plaintiff cannot sustain a claim under 42 U.S.C. 1983 for false arrest.  All claims against in the individual officers must be dismissed as a matter of law.

**POINT III**

**PLAINTIFF HAS FAILED TO ESTABLISH A PRIMA FACIE CASE OF LIABILITY ON THE PARTY OF THE CITY OF BRIGETON AND PLAINTIFF'S CLAIMS MUST BE DISMISSED AS A MATTER OF LAW**

In order to hold a municipality liable under §1983, a plaintiff must establish: "(1) the municipality's officers inflicted cognizable injury on plaintiff; (2) the officers acted pursuant to a municipal custom or policy not to adequately train or supervise; (3) there is 'a direct causal link between [the] municipal policy or custom, and the alleged constitutional deprivation', and (4) the failure to so train or supervise 'amounts to deliberate indifference to the rights of persons with whom the police came into contact'." Rodriguez v. City of Patterson, 1995 WL 363710 (D.N.J. 1995); *See also* City of Canton v. Harris, 489 U.S. 378, 385-88 (1989).

"A government 'policy' exists only when 'a deliberate choice to follow a course of action is made from among various alternatives' by city policy makers'." Rodriguez, supra (quoting Pembaur v. Cincinnati, 475 U.S. 469, (1986) (plurality)). Thus, such policy must be established in an ordinance, rule, edict or other some other official statement or proclamation. Id.; *See* Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3rd Cir. 1990). On the other hand, a "custom," although not authorized by law, can become a practice "so permanent and well-settled" it becomes the equivalent of law. Id.

In order to meet the deliberate indifference standard for directly subjecting a municipality to §1983 liability, a plaintiff must present scienter-like evidence of indifference on the part of a particular policy maker or policymakers.  Simmons v. City of Philadelphia, 947 F. 2d 1042, 1059-1060, 1062-1063 (3d Cir. 1991), cert. den. 503

11

U.S. 985 (1992).  The scienter-type evidence must be adduced with respect to a high-level official determined by the district court, in accordance with local law, to have final policy-making authority in the areas in question.  Id.

The Monell court defined a municipal policy as a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers."  Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690 (1978); see also Simmons at 1059.  Additionally, the Court defined a municipal custom or practice as something lacking the formality of a policy or practice of state officials which is nevertheless so permanent and well settled as to constitute a "custom or usage" with the force of law.  Monell at 681; citing Adickles v. S.H. Kress & Co., 398 U.S. 144, 167-168 (1970).

In City of Canton v. Harris, supra, the Supreme Court recognized the potential liability of a municipality for failure to train its police officers.  The Court emphasized, however, that such liability may arise only when that failure amounts to "deliberate indifference to the rights of persons with whom the police come into contact."  Canton. at 388.  Thus, a municipality's deliberately indifferent failure to train is **not** established simply by presenting evidence of an individual officer's shortcoming; or providing that an otherwise sound program occasionally was negligently administered; or a bare showing that better training would have enabled the officer to avoid injury causing contact.  Id. at 390-391.  Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality can the City be held liable for such a failure under §1983.  Id. at 388.

In this case discovery has failed to yield sufficient evidence to support any of the elements of a <u>Monell</u> claim against the City of Bridgeton.  First, as discussed above with respect to the claims against the individual defendants, the plaintiffs have failed to establish the necessary predicate of a constitutional violation.  Second, there is no evidence that shows that the departmental policies bespeaks deliberate indifference to the constitutional rights of others.  Third, discovery has revealed no evidence to support the existence of a municipal custom demonstrating such deliberate indifference.  Thus plaintiff's constitutional claims against the City of Bridgeton fail as a matter of law.

In order to hold the City liable, Plaintiff must show that the City was deliberately indifferent in the training and supervision of their officers as were their policies, procedures or customs. Plaintiff has provided no evidence of any deficiencies within the City of Bridgeton or any evidence of a failure by the City in training or supervising, therefore all Dennis' claims against the City must be dismissed.

## **POINT IV**

### **PLAINTIFF'S CONTINUED INCARCERATION, FOLLOWING A JUDICIAL FINDING OF PROBABLE CAUSE, WHICH HE DID NOT CHALLENGE CANNOT AS A MATTER OF LAW BE INPUTED TO ANY OF THE DEFENDANTS**

As stated above, probable cause has been described by the court as "a probability or substantial chance of criminal activity, not an actual showing of such activity", <u>Illinois</u> 462 U.S at 244 n. 13 (1983) or "facts and circumstances known to the officer [that] warrant a prudent man in believing that an offense has been committed", <u>Henry</u> 361 U.S.at 102 (1959). However, the holding over by a magistrate is strong evidence of probable cause, though not in itself dispositive of the question. It is said in <u>Prosser on Torts</u>, (2nd ed. 1955) p. 657, s 98:

> …where the accused is committed or held to bail by a magistrate, or indicted by the grand jury, it is evidence that there was probable cause for the prosecution. It is very often said that this establishes a '*prima facie*' case; but since the plaintiff has the burden of proving lack of probable cause in any case, and is free to do so, this apparently means nothing more than that the commitment is important evidence on the issue.'

And the <u>Restatement of Torts</u>, s 663 lays down the rule in these words entitled "Effect of Discharge or Commitment by a Magistrate": "(2) The magistrate's commitment of the accused is evidence that the person initiating the proceedings had probable cause."

The rule as stated in the <u>Restatement</u> and in <u>Prosser</u> is that commitment by a magistrate is no less than evidence of probable cause and no more than *prima facie* evidence of it.

In New Jersey the failure of the grand jury to indict is not considered conclusive on the question of probable cause but proof of termination of the criminal proceedings in favor of the accused is admissible. However, an inference that defendant lacked

14

reasonable and probable cause for the proceeding does not arise by proof that the termination resulted from the refusal of a grand jury to indict the plaintiff; or from the voluntary abandonment of the proceeding by the defendant, or from plaintiff's exoneration of the charge. <u>Shoemaker v. Shoemaker</u>, 11 N.J.Super. 471, 478, (App.Div.1951).

Therefore, simply because the Grand Jury responded with a 'no bill' in regard to Dennis' arrest on June 24, 2004, does not indicate that the individual officers did not have probable cause for the arrest.  In point of fact, the Municipal Judge did find probable cause for the arrest, which supports validity of the arrest.

During Dennis' incarceration he was appointed a Public Defender, who did made a motion to reduce bail, but never challenged the arrest warrant.  Certainly, Dennis and his representative had ample opportunity to raise this issue before the court prior to this suit nearly two years later.

As for Dennis' incarceration in the Cumberland County Jail prior to the Grand Jury proceedings, the individual officers nor is the City of Bridgeton liable for the speed at which a Grand Jury is impaneled. Once the officers have made the arrest and the municipal judge has determined probable cause and set bail, it was no longer in the hands of the local police officers.

15

## POINT V

**NO CLAIMS CAN BE BROUGHT AGAINST THE CITY OF BRIDGETON POLICE DEPARTMENT AS THE CITY OF BRIDGETON IS A DEFENDANT, THEREFORE PLAINTIFF'S CLAIMS AGAINST THE POLICE DEPARTMENT MUST BE DISMISSED AS A MATTER OF LAW**

With regard to the City of Bridgeton Police Department, numerous courts have held that "in §1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and not a separate judicial entity." Hernandez v. Borough of Palisades Park Police Dept., 58 Fed.Appx. 909, 912 (3rd Cir. 2003); Colburn v. Upper Darby Twp., 838 F.2d 663, 671 n.7 (3rd Cir. 1988).   Accordingly, plaintiffs cannot maintain a §1983 action against the City of Bridgeton Police Department because the City of Bridgeton is a named defendant in said action.  Thus plaintiffs' claims against the City of Bridgeton Police Department should be dismissed summarily

## **CONCLUSION**

Based on the foregoing, it is respectfully requested that the defendant, City of Bridgeton, Officer Fox, Officer Lopez & Detective Joshua Thompson's Motion for Summary Judgment be granted dismissing the plaintiff's Complaint and any and all Crossclaims.

Respectfully submitted,

**METHFESSEL & WERBEL, ESQS.**
Attorneys for City of Bridgeton, Officer Fox, Officer Lopez & Detective Joshua Thompson

By:_____
        Eric L. Harrison (ELH-7396)

DATED:  10/10/06

17