(Not for publication)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                              :
ANTHONY DENNIS,               :
                              :
        Plaintiff,            :    Civil No. 05-4733 (RBK)
                              :
    v.                        :    **OPINION**
                              :
CITY OF BRIDGETON, et al.,    :
                              :
        Defendants.           :
_____:

**KUGLER**, United States District Judge:

Presently before this Court is a motion by defendants City of Bridgeton, Bridgeton Police Department, Officer Fox, Officer Lopez, and Detective Joshua Thompson ("Defendants"), seeking summary judgment on a Complaint filed by plaintiff Anthony Dennis ("Plaintiff"), bringing an action pursuant to 42 U.S.C. § 1983 for an alleged violation of his civil rights. For the reasons set forth below, the Court will grant Defendants' motion.

**I.  BACKGROUND**

Plaintiff filed his Complaint on September 30, 2005. In the Complaint, Plaintiff accused Defendants of having violated his civil rights after they "arrested me under False Pretenses" (Compl. at 5.) Plaintiff alleges that these arrests occurred "[w]ithout probable cause." (Id. at 7.)

Plaintiff further alleges that after Defendants "realized that my arrest was a mistake, he (they) still held me in jail, & derived me of my liberty. (freedom)" (Id. at 6.)  This Court construes Plaintiff's Complaint to allege that Defendants committed the constitutional violations of false arrest and false imprisonment.

Plaintiff's allegations stem from an arrest that occurred on June 24, 2004, when Officers Fox and Lopez of the Bridgeton Police Department arrested Plaintiff.  Officers Fox and Lopez suspected Plaintiff of having stolen ten dollars from a man whom they knew as Roberto Hernandez Agular.  After being brought to the police station, Plaintiff was interviewed by Detective Joshua Thompson.  Thereafter, a municipal judge found that probable cause existed and an arrest warrant issued against Plaintiff.  Bail was set at $5,000, which Plaintiff did not post.  In January 2005, the case was presented to a grand jury, which "no billed" the charges against Plaintiff.  Charges were dismissed and Plaintiff was thereafter released from custody.

## II.  STANDARD FOR SUMMARY JUDGMENT

Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56.  Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III. DISCUSSION

### A.   Qualified Immunity

Government officials who are accused of violating a person's constitutional rights while performing discretionary functions are entitled to qualified immunity. Qualified immunity shields officials "from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This analysis is two-fold. First, the Court is to assess whether the facts as alleged by the plaintiff amount to a constitutional violation. If this test is met, the Court then determines whether the right is "clearly established."

Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Kopec v. Tate, 361 F.3d 772, 775-76 (3d Cir. 2004). In other words, before engaging in a determination of whether a right is clearly established, the Court must first determine whether a constitutional violation has occurred, because "[i]f the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." Id. at 776 (quoting Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002)). Therefore, this Court must first assess the claims made by Plaintiff to determine whether they amount to a violation of his constitutional rights. Only if such a finding is made does this Court then proceed to analyze whether the right violated was clearly established.

      B.      Standard for False Arrest and False Imprisonment

It is well established in the Third Circuit that an arrest without probable cause is a constitutional violation actionable under § 1983. See Walmsley v. Philadelphia, 872 F.2d 546 (3d Cir. 1989) (citing cases); see also Albright v. Oliver, 510 U.S. 266, 274 (1994) (a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures). To state a claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause. Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).

It is similarly well established that "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest. A false imprisonment claim under § 1983 which is based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures." Groman v. Township of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995).

Subsequently, a defense to an unlawful arrest claim is that the police officer defendants acted with probable cause. Sharrar v. Felsing, 128 F.3d 810, 817-18 (3d Cir. 1997) (a key element of a § 1983 unlawful arrest claim is that the police officer arrested the plaintiff without probable cause). Similarly, "an arrest based on probable cause could not become the source of a claim for false imprisonment." Groman, 47 F.3d at 636 (citing Baker v. McCollan, 443 U.S. 137, 142 (1979)).

Therefore, in the case presently before this Court, Defendants are entitled to summary judgment if the facts, taken in a light most favorable to Plaintiff, show that Defendants had probable cause to arrest Plaintiff. To establish the absence of probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed." Lind v. Schmid, 67 N.J. 255, 262, 337 A.2d 365 (1975). "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir. 1997).

    C.    <u>Analysis</u>

In this matter, Plaintiff has made factual representations to this Court in both a memorandum of factual contentions that Plaintiff attached to his pretrial memorandum and his opposition to this motion for summary judgment. Plaintiff alleges that a "Hispanic/Mexican"

male, presumably Mr. Agular, began pursuing Plaintiff while wielding a knife.  Plaintiff alleges that he was running away from Mr. Agular while yelling for someone to call the police.  Plaintiff alleges that the police officers spotted him running, and ordered him to get on the ground.  Plaintiff alleges that Officer Lopez was at this time speaking with Mr. Agular in Spanish.  Plaintiff alleges that he was then taken to the police station, where he informed Detective Thompson of his version of the relevant events.  Plaintiff claims that Officer Lopez commented that he "[didn't] care what happens you're going to jail if I can help it."  (Mem. at 3.)  Plaintiff claims that he was later told that he was being arrested for possession of a weapon, robbery, and theft.  Plaintiff claimed that he did not have a weapon, at which point he was informed that he was believed to have wielded a bottle.

     Plaintiff claims that the officers' failure to accept Plaintiff's assertions that he had not committed a crime, and to instead believe Mr. Agular's statement that Plaintiff had demanded money from Mr. Agular under threat of violence, amounts to a constitutional violation.  Plaintiff claims that Mr. Agular had given police false information about not only the events of that evening, but also regarding his residence and identity, and that if Defendants had conducted a proper investigation, they would not have arrested Plaintiff.  Plaintiff does not dispute Defendants' assertion that Mr. Agular told Officer Lopez that Dennis had made these statements to Officer Lopez.  Instead, Plaintiff asserts that Defendants "violated my constitutional rights when they decided that Mr. Agular was truthful and I was lying."  (Pl.'s Br. at 3.)

     Whether Plaintiff was actually guilty of the crime for which he was arrested is immaterial when determining whether the police had probable cause to arrest him.  See Dowling, 855 F.2d at 141 ("The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the

person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense."). Furthermore, the Third Circuit has held that "[w]hen a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause to arrest." Sharrar, 128 F.3d at 818; see also Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness.") (citation omitted).  In this matter, Plaintiff does not allege facts, nor does he dispute Defendants' factual assertions, sufficiently to allow a finder of fact to determine that he was arrested without probable cause.  Whether Mr. Agular lied to police on the night in question is irrelevant; as a matter of law, the police were within their rights to believe Mr. Agular, and so doing, they had probable cause to arrest Plaintiff.  As Plaintiff cannot show that the police officers lacked probable cause to arrest him, he cannot set forth sufficient facts to show that Defendants violated his constitutional rights by falsely arresting and imprisoning him.

## IV.  CONCLUSION

Based on the foregoing reasoning, this Court will grant Defendants' motion for summary judgment.  An accompanying Order shall issue today.


Dated:  November 17, 2006               s/ Robert B. Kugler
                                        ROBERT B. KUGLER
                                        United States District Judge